```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
K.D. HERCULES, INC. et al.,                                 :
                                    Plaintiffs,             :
                                                            :   20 Civ. 4829 (LGS)
            -against-                                       :
                                                            :   OPINION AND ORDER
LABORERS LOCAL 78 OF THE LABORERS'                          :
INTERNATIONAL UNION OF NORTH                                :
AMERICA et al.,                                             :
                                                            :
                                    Defendants.             :
------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

Plaintiffs K.D. Hercules, Inc., K.D. Hercules Group, Inc. (collectively, "K.D.") and Kyriakos Diakou bring this action against Laborers Local 78 of the Laborers' International Union of North America ("Local 78") and Mason Tenders' District Council of New York, affiliated with the Laborers' International Union of North America ("District Council"). Plaintiffs allege that from June 2019 to October 2019, Defendants engaged in unlawful secondary activity by picketing a construction site where K.D. was contracted to work in violation of Section 303 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 187 ("Section 303"), and Section 8(b)(4) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(b)(4)(ii) ("Section 8(b)(4)"). Plaintiffs bring six claims under New York state law: defamation, defamation per se, tortious interference with contract, tortious interference with prospective economic advantage, business disparagement and intentional infliction of emotional distress ("IIED"). Plaintiffs also seek exemplary damages. Defendants move to dismiss the claims of tortious interference with contract, tortious interference with prospective economic advantage and IIED as preempted by the NLRA and LMRA. Defendants also move to dismiss

the count of exemplary damages as barred under New York law.[1]  For the reasons below, the motion is granted.

I.   **BACKGROUND**

The following allegations are taken from Plaintiffs' Second Amended Complaint ("SAC") and are accepted as true for purposes of this motion.  *See R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 509, 512 (2d Cir. 2020).  Defendants Local 78 and District Council (collectively, the "Union") are labor organizations recognized under the NLRA that represent workers respectively in the asbestos abatement industry and construction industries.  K.D. is a New York corporation owned and controlled by Mr. Kyriakos Diakou and a signatory employer to a collective bargaining agreement ("CBA") with the Union from February 1, 2013, to June 30, 2019.

On December 16, 2017, K.D. contracted with Riverbay Corporation ("Riverbay") to provide asbestos abatement work at Co-Op City, a cooperative housing development in the Bronx, New York.  In November and December 2018, the Union stated its intent to withdraw its members from K.D.'s job sites due to K.D.'s continued failure to pay Union benefits.  Thereafter, individuals from the Union frequented Co-Op City, demanded the site be shut down and threatened to withdraw Union members from the Co-Op City project unless K.D. was terminated.  From June to October 2019, the Union demonstrated by (1) placing large inflatable rat-shaped balloons around Co-Op City's buildings and (2) distributing flyers encouraging tenants to contact Riverbay to terminate K.D.  Those flyers identified K.D. as a "substandard and

---

[1] Plaintiffs filed their SAC on March 10, 2021, with the Court's leave.  The SAC adds K.D. Hercules Group, Inc., as a party but does not add any claims or causes of action.  Defendants move to dismiss the SAC for the same reasons set forth in their motion to dismiss the First Amended Complaint.

unsafe" contractor that "exploited" immigrant workers and exposed the community to "danger." The Union's activities led to K.D.'s termination from the Co-Op City project in November 2019, compromised K.D.'s existing contracts with other employers, prevented K.D. from winning new contracts from the City of New York and caused Mr. Diakou emotional distress and physical health issues.

The SAC alleges that the Union's activities constituted a "defamatory and fraudulent smear campaign" to interfere with the business relationship between K.D. and Riverbay, constituting an unlawful secondary boycott under the LMRA. The SAC predicates its tortious interference and IIED claims on the same factual allegations.

## II. Discussion

### A. Preemption

"Under the Supremacy Clause, 'the Laws of the United States' are the 'supreme Law of the Land.'" *Marentette v. Abbott Labs., Inc.*, 886 F.3d 112, 117 (2d Cir. 2018) (quoting U.S. Const. art. VI, cl. 2). "Congress therefore has 'the power to preempt state law' through federal legislation." *Id.* (quoting *Arizona v. United States*, 567 U.S. 387, 399 (2012)). At the pleading stage, preemption constitutes grounds for dismissal only "if the statute's barrier to suit is evident from the face of the complaint." *Ricci v. Teamsters Union Local 456*, 781 F.3d 25, 28 (2d Cir. 2015); *accord Insolvency Servs. Grp., Inc. v. Samsung Elecs. Am., Inc.*, No. 20 Civ. 8179, 2021 WL 871434, at *2 (S.D.N.Y. Mar. 8, 2021). "[W]hen considering a preemption argument in the context of a motion to dismiss, the factual allegations relevant to preemption must be viewed in the light most favorable to the plaintiff. A district court may find a claim preempted only if the facts alleged in the complaint do not plausibly give rise to a claim that is not preempted."

*Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 444 (2d Cir. 2015); *accord Critcher v. L'Oreal USA, Inc.*, 959 F.3d 31, 33 n.1 (2d Cir. 2020).

1. **Section 303 Preemption**

Section 303 preempts Plaintiffs' state law claims for tortious interference with contract and prospective economic advantage.  Section 303 makes it unlawful "for any labor organization to engage in any activity or conduct defined as an unfair labor practice" under the statute, 29 U.S.C. § 187(a), and provides a private right of action for harm suffered from such activity or conduct, 29 U.S.C. § 187(b).  Under the LMRA, it is an unfair labor practice for a union to "threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is . . . forcing or requiring any person . . . to cease doing business with any other person."  29 U.S.C. § 158(b)(4)(ii).  Accordingly, Section 303 "is commonly referred to as the [LMRA's] 'secondary boycott' provision, which prohibits any labor organization from 'picketing against an employer with whom it does not have a dispute, with an object of forcing that secondary employer to cease doing business with a primary employer.'"  *Hudson Yards Constr. LLC v. Bldg. & Constr. Trades Council of Greater N.Y.*, No. 18 Civ. 2376, 2019 WL 233609, at *4 (S.D.N.Y. Jan. 15, 2019) (quoting *NLRB v. Local 3, International Brotherhood of Electrical Workers*, 471 F.3d 399, 402 (2d Cir. 2006)).

"[S]tate law has been displaced by § 303 in private damage actions based on peaceful union secondary activities." *Hudson Yards Constr.*, 2019 WL 233609, at *4 (quoting *Monarch Long Beach Corp. v. Soft Drink Workers, Local 812, International Brotherhood of Teamsters*, 762 F.2d 228, 232 (2d Cir. 1985)); *see also Iodice v. Calabrese*, 512 F.2d 383, 390 (2d Cir. 1975) (dismissing plaintiffs' state law claim for tortious interference with contractual relations because an action under Section 303 protects "essentially the same interests"); *Allstate Interiors,*

4

*Inc. v. United Brotherhood of Carpenters & Joiners*, 2010 WL 3894915, at *2, *4 (S.D.N.Y. Sept. 10, 2010) (holding Section 303 preempts causes of action for interference with prospective economic advantage and prima facie tort); *Jung Sun Laundry Grp. Corp. v. Laundry, Dry Cleaning, & Allied Workers Joint Bd.*, No. 10 Civ. 468, 2010 WL 4457135, at *3 (S.D.N.Y. Nov. 1, 2010) (finding claims of tortious interference with contract displaced by Section 303 in private damage actions based on secondary activities). "State law tortious interference claims against union secondary boycotts are exclusively governed by Section 303." *Allstate Interiors, Inc.*, 2010 WL 3894915, at *4; *accord Colacino v. Davis*, 19 Civ. 9648, 2020 WL 3959209, at *4-5 (S.D.N.Y. July 13, 2020).

The SAC's tortious interference claims are preempted because they rest on the same allegations of secondary boycott activity as the Section 303 claim. Specifically, the SAC identifies neutral third party Riverbay as the secondary employer and alleges that Defendants pressured Riverbay to terminate K.D.'s contract via distribution of flyers and erection of inflatable rats at Co-Op City. This alleged conduct is secondary activity governed by the LMRA. *See Chefs' Warehouse, Inc. v. Wiley*, No. 18 Civ. 11263, 2019 WL 4640208, at *6-7 (S.D.N.Y. Sept. 24, 2019) (finding threats to picket secondary employer and erect inflatable rat near premises subject to the LMRA); *All-City Metal, Inc. v. Sheet Metal Workers' International Association Local Union 28*, No. 18 Civ. 958, 2020 WL 1466017, at *3 (E.D.N.Y. Mar. 25, 2020) (finding union's peaceful erection of inflatable rats and distribution of flyers subject to LMRA).

Plaintiffs argue that Section 303 preemption cannot apply because Defendants have not identified a secondary employer. This argument is unpersuasive because the SAC's Section 303

5

claim is explicitly premised on allegations that Riverbay is a secondary employer subject to the Union's secondary activity.

### 2. *Garmon* Preemption

The SAC's IIED claim is preempted under the LMRA pursuant to *San Diego Building Trades Council v. Garmon*, which held that "[w]hen it is clear or may fairly be assumed that the activities which a state purports to regulate are protected" by the LMRA, the federal and state courts must defer to the exclusive competence of the National Labor Relations Board ("NLRB") and are without jurisdiction to adjudicate tort claims based on the same activity. 359 U.S. 236, 244 (1959). The *Garmon* doctrine prohibits states from regulating "activity that the NLRA protects, prohibits, or arguably protects or prohibits." *Ass'n of Car Wash Owners Inc. v. City of New York.*, 911 F.3d 74, 81 (2d Cir. 2018).

The SAC's IIED claim is predicated on the same alleged Union conduct as its claim of unlawful secondary boycott.[2] Section 8(b)(4) specifically addresses secondary boycott activity of the kind alleged -- attempts by a union to "threaten, coerce or restrain" a secondary employer from business with any other person. 29 U.S.C. § 158(b)(4)(ii); *see also Chefs' Warehouse*, 2019 WL 4640208, at *6; *All-City Metal*, 2020 WL 1466017, at *3. The SAC's IIED claim is preempted under *Garmon*. *See Ass'n of Car Wash Owners*, 911 F.3d at 81. Although Plaintiffs contend their IIED claim is "directed toward Defendants' behavior and actions that are not of particular interest to the [NLRB]," that argument is unpersuasive because the SAC alleges that Defendants' actions giving rise to the IIED claim also constituted an unfair labor practice.

---

[2] The SAC's tortious interference claims are also preempted pursuant to the *Garmon* doctrine as they are predicated on the same alleged Union conduct as their claim of illegal secondary boycott, which is undisputedly within the NLRB's reach. *See Allstate Interiors, Inc.*, 2010 WL 3894915, at *3-4 (collecting cases).

6

Plaintiffs also suggest that their IIED claim is subject to two narrow exceptions to *Garmon* preemption. Under the first exception, states may retain power to regulate activity that is "a merely peripheral concern of the [LMRA]." *Garmon*, 359 U.S. at 243; *accord Chefs' Warehouse*, 2019 WL 4640208, at *8. Plaintiffs argue that the conduct giving rise to the IIED claim is peripheral to the LMRA. This argument is unpersuasive because, as discussed above, the conduct giving rise to the IIED claim is squarely governed by federal labor law. Plaintiffs also note Supreme Court precedent stating that conduct that is arguably an unfair labor practice is not preempted where it is "so outrageous that no reasonable man in a civilized society should be expected to endure it," such as "frequent public ridicule" or "incessant verbal abuse." *Farmer v. United Brotherhood of Carpenters & Joiners, Local 25*, 430 U.S. 290, 293, 296, 302 (1977) (internal citation and quotation marks omitted). The SAC alleges no such behavior, but instead bases the IIED claim on the Union's use of inflatable rat balloons and distribution of flyers -- typical peaceful secondary boycott activity. *See, e.g.*, *Chefs' Warehouse*, 2019 WL 4640208, at *8 (treating defendant union's picketing and installation of a "giant inflatable rat" as standard secondary activity); *Pulizotto v. McMahon*, 406 F. Supp. 3d 277, 304 (S.D.N.Y. 2019) (noting that inflatable rats are traditional symbols of labor unrest). Mindful that "a plaintiff cannot obtain judicial intervention with respect to the regulation of activities of primary concern to the NLRB merely by labelling his cause of action as a state tort," *Spielmann v. Anchor Motor Freight Inc.*, 551 F.Supp. 817, 826 (S.D.N.Y. 1982); *accord Asbestos, Lead & Hazardous Waste Local No. 78 v. WTC Contracting, Inc.*, No. 06 Civ. 14200, 2007 WL 2119897, at *3 (S.D.N.Y. July 23, 2007) (collecting cases), the IIED claim is not subject to the first *Garmon* exception.

Under the second *Garmon* exception, state causes of action are not preempted where "the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in

7

the absence of compelling congressional direction, [the Court] could not infer that Congress had deprived the States of the power to act," such as interests in preventing "violence and imminent threats to the public order."  *Garmon*, 359 U.S. at 244, 247; *accord Chefs' Warehouse*, 2019 WL 4640208, at *8.  Plaintiffs claim that these state interests are implicated by Defendants' distribution of flyers and erection of inflatable rats.  This argument is unpersuasive, as the SAC does not plausibly allege any violence or threat to the public order from the commonplace secondary activity alleged.  *See Chefs' Warehouse*, 2019 WL 4640208, at *8; *Pulizotto*, 406 F. Supp. 3d at 304.  Plaintiffs instead rely on various cases that, unlike the facts alleged in the SAC, involved plausible threats of violence to the public.  *See Sears, Roebuck & Co. v. San Diego County District Council of Carpenters*, 436 U.S. 180, 202 (1978) (concerning trespassory picketing, which inherently involves a risk of violence); *International Union, United Automobile, Aircraft & Agricultural Implement Workers v. Russell*, 356 U.S. 634, 639 (1958) (concerning threats of bodily harm and of damage to property); *United Construction Workers v. Laburnum Constr. Corp.*, 347 U.S. 656, 658 (1954) (concerning threats of violence to such a degree that contractor was compelled to abandon its projects).  Plaintiffs' IIED claim does not fall under the second *Garmon* exception.

### B.     Exemplary Damages

The SAC brings a separate claim for exemplary, or punitive, damages.  Under New York law, "there is no independent cause of action for punitive damages," which must instead be sought as a remedy in connection with other claims.  *Wholey v. Amgen, Inc.*, 86 N.Y.S.3d 16, 18 (1st Dep't 2018); *see also Verdi v. City of New York*, 306 F. Supp. 3d 532, 541 n.6 (S.D.N.Y. 2018) (collecting cases).  Plaintiffs cite a variety of cases noting that such damages are an appropriate remedy for a successful claim that vindicates public rights.  The issue of whether

punitive damages are an adequate remedy should Plaintiffs succeed on their remaining claims is premature and may be raised on a motion for summary judgment.

      **C.**     **Leave to Replead**

Plaintiffs seek leave to amend their SAC in the event Defendants' motion to dismiss is granted. Leave to replead or amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a). "However, where the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." *Hayden v. Cty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999); *accord Olson v. Major League Baseball*, 447 F. Supp. 3d 174, 177 (S.D.N.Y. 2020). Leave to amend also may be denied where the plaintiff "fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014). Plaintiffs' tortious interference, IIED and exemplary damages claims fail as a matter of law, and it does not appear that any amendment would cure those deficiencies. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (denying leave to replead after finding that "[t]he problem with [plaintiff's] causes of action is substantive; better pleading will not cure it"); *accord Trombetta v. Novocin*, 414 F. Supp. 3d 625, 634 (S.D.N.Y. 2019). Plaintiffs' request for leave to replead is denied. The SAC's claims for tortious interference with contract, tortious interference with prospective economic advantage, intentional infliction of emotional distress and exemplary damages are dismissed with prejudice.

**IV.**    **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. The Clerk of Court is respectfully directed to close the docket entry at No. 32.

Dated: April 26, 2021
      New York, New York

                                        LORNA G. SCHOFIELD
                                      UNITED STATES DISTRICT JUDGE